409 So.2d 780 (1981)
S. O. CHANDLER, et al.
v.
J. P. CHANDLER.
80-577.
Supreme Court of Alabama.
December 11, 1981.
Rehearing Denied February 5, 1982.
William R. Stokes, Jr. of Stokes, Jernigan & Stokes, Brewton, for appellants.
G. A. Lindsey, Elba, for appellee.
JONES, Justice.
Appellants (Plaintiffs below) are six of the eight children of J. W. and Maggie Chandler. Appellee, J. P. Chandler (Defendant below), is a brother of Appellants. In June, 1964, the Chandler parents executed a deed purportedly conveying to Maggie an undivided one-half interest in 270 acres for life, reserving unto J. W. an undivided one-half interest for life, with right of survivorship for the lifetime of the survivor, and with remainder in fee simple to their son, J. P. The father and mother lived on the subject property for many years, until they died in 1972 and 1975, respectively.
*781 In May, 1980, this action was commenced, seeking to set aside the deed on grounds of undue influence, mental incapacity of the father (grantor), and "no legal delivery" of the deed. This appeal is from the trial court's judgment upholding the validity of the deed.
Appellants, per counsel's brief, state the issue presented for our review:
"Whether there is a valid delivery of a deed where the deed is held by a third party depositary `for safekeeping,' subject to be returned to the grantors upon request, to be transferred to the grantee upon the death of the grantors."
If we accept the "... subject to be returned to the grantors upon request ..." portion of Appellants' statement of the issue, unquestionably the trial court committed reversible error. The reserved right of a grantor, who has left the deed with a third party, to retrieve the instrument, and thus revoke the grant, voids delivery of the deed which is essential to its validity as a conveyance. Perkins v. Perkins, 206 Ala. 571, 91 So. 256 (1921).
Appellants' brief correctly sets forth the applicable "lack of delivery" rules:
"Delivery of a deed is essential to its validity as a conveyance. Perkins v. Perkins, [supra]. Delivery is the final act which consummates the deed, signifying that it is in operation and effect. 23 Am.Jur.2d Deeds § 78. Generally, where the deed is not delivered during the life of the grantor, no right or title is conferred on the grantee. Henslee v. Henslee, 263 Ala. 287, 82 So.2d 222, 226 [1955]. An exception to the general rule is where the grantor delivers a deed to a third party to be delivered to the grantee after the death of the grantor. However, there is no delivery when the deed is merely given to the third party for safekeeping. Culver v. Carroll, 175 Ala. 469, 57 So. 767, 770 (1911); 26 C.J.S. Deeds § 43. If the deed is subject to be recalled by the grantor before delivery to the grantee, there is no effectual delivery by the grantor. Culver, supra, 57 So. at 768."
Urging our application of these rules to the evidence of record before us, Appellants conclude:
"The deed in this case was held by the Dozier bank `for safekeeping,' according to the head cashier of the bank.... The grantor had the right to go back to the bank and recover the deed.... The trial court failed to recognize the well-established principles of delivery in upholding the sufficiency of delivery, and, thus, ruled incorrectly that the conveyance was valid."
The well-settled, and equally well-understood, "sufficiency of delivery" principle, where delivery is made to a person other than the grantee or his agent, is discussed in Fitzpatrick v. Brigman, 130 Ala. 450, 30 So. 500 (1900):
"[T]he delivery must be so effectual as to deprive the grantor of the right to revoke it. For so long as he reserves to himself the locus penitentiae, there is no delivery no present intention to divest himself of the title to the property.... [T]he grantor need not expressly reserve to himself this right to repent, but if his act upon which a delivery is predicated does not place the deed beyond his control, as a matter of law, then his right of revocation is not gone.
"... `The law does not presume, when a deed is handed to a third person, that it has been with the intention to pass title to the grantee. In order to make such an act a delivery to the grantee, the intention of the grantor must be expressed at the time in an unmistakable manner.' 5 Am. & Eng. Encyc. Law (1st ed.), note 4, on p. 448." Cited with approval and applied in Culver v. Carroll, supra.

We look to the record, then, to test the Appellants' assertion that "... grantors unquestionably did not place the deed beyond their complete control since the third party depositary would have returned the deed had the grantors requested it; thus, the right of revocation was not gone."
In support of their "lack of delivery" contention, Appellants accurately summarize the evidence:

*782 "The deed in question was not transferred directly to the defendant-grantee, but rather was transferred to the bank vault of the Dozier bank by J. W. Chandler sometime in 1965. Ms. Sport [the head cashier] testified there was only one packet in the Dozier bank vault belonging to J. W. Chandler. She testified that she personally received instructions from J. W. Chandler at the time the deed was put in the vault, ... [and] that the deed was given to the defendant, pursuant to instructions on a note attached to the deed instructing that the deed be delivered to J. P. Chandler upon the death of J. W. Chandler.... Ms. Sport testified that on most of the `stuff' the bank keeps, since it has no safety deposit boxes, `you have got to have some kind of instructions as to who to deliver certain items to.' Questioned further, Ms. Sport stated that, `[I]f I delivered the documents to J. P. Chandler, there was some information attached to it....' Pressed further about the presence of a note, she was asked, `Do you remember whether or not there was any ...?' to which Ms. Sport responded, `There was or I wouldn't have delivered them to J. P.' Asked again, whether she, in fact, remembers a note, she replied, `Yes.' Finally, referring to the presence of a note with instruction, she stated, `I told you very distinctly that if I delivered them, that it was on there.' She stated that instructions on the note were typed out by another employee of the bank, Mr. Merrill.
"Ms. Sport testified that when a person, such as J. W. Chandler, leaves a deed with the bank, that person has a right to go back and pick that deed up at any time he desires. She was asked whether `Mr. Chandler or any other person for that matter [would] have had the right or control to go get the paper from the time that he put them in there at any time prior to [his] death,' and [she] responded that he would have the right to go to the bank and take back the document. Asked the purpose of having this service such as was provided J. W. Chandler when he transferred his deed to the Dozier bank, Ms. Sport replied, `Just for safekeeping.'"
The question for our resolution is whether the trial court erred, in the face of Ms. Sport's testimony relating to J. W. Chandler's "right to go to the bank and take back the document," in finding a valid delivery of the deed. We hold that the trial court did not err in concluding from Ms. Sport's testimony, when considered along with the totality of the circumstances, that J. W. Chandler, at the time he delivered the deed to the bank for "safekeeping," possessed the requisite intent to relinquish control over the deed and have it take effect as a present conveyance.
Indeed, we are of the opinion that J. W. Chandler's unequivocal instruction to the third party to deliver the deed, upon his death, to his son J. P., absent any expression or conduct on the part of the father relative to his right to retrieve the deed, or otherwise exercise control thereof, precluded a contrary finding on the part of the trial court. The policy of the bank in permitting those who left papers in its vault to take such papers back from the bank is not determinative of the grantor's surrender of control of the instrument in question. The fact of delivery rests in the grantor's intention, which is an issue of fact to be determined from all the attendant circumstances at the time. Elsberry v. Boykin, 65 Ala. 336, 337 (1880); Fitzpatrick v. Brigman, 133 Ala. 242, 31 So. 940 (2nd appeal 1901).
Here the grantor, for a valuable consideration expressed in the deed, granted a life estate in a one-half interest to his wife, reserved to himself a life estate in the remaining one-half interest (expressly creating a joint tenancy with right of survivorship), with the remainder to his son J. P. He delivered the deed to the bank with express instructions (both written and oral) to deliver the deed to J. P. upon the grantor's death. The bank's policy of freely returning such papers upon its customers' requests is grounded in the nature of the bank's service to, and relationship with, its customers. Such policy, grounded on institutional *783 good will considerations, is not determinative of the legal requisite of the grantor's intention to so surrender control of the deed as to effectuate the conveyance.
We are clear to the conclusion, and we so hold, that the trial court acted properly in holding, upon consideration of all the attendant circumstances, that J. W. Chandler intended to deliver the deed to the grantee when he deposited it with the bank and instructed its personnel to deliver it to J. P. Chandler upon the event of the grantor's death.
Central to our holding is the undisputed fact that the grantor gave express, unequivocal instructions to the third party for delivery of the deed to the named grantee upon a certain future eventthe death of the grantor. Given this fact, along with the other attendant circumstances, including the absence of words or conduct reserving the grantor's right of revocation, the inference of completed delivery, fully executed, is amply sustainable, and in accord with our case law cited above. See, also, Ferrell v. Stinson, 233 Iowa 1331, 11 N.W.2d 701 (1943).
Moreover, the trial judge was warranted under the evidence in finding the requisite delivery as between the grantors and the life tenants without reference to any issue of delivery as between the grantors and the remainderman. Nevertheless, we have addressed the issue of "delivery" as between the grantor (the father) and the remainderman (the son) in the context of the issue as framed by the pleadings and tried before the trial court and as presented and argued to this Court.
AFFIRMED.
FAULKNER, SHORES, BEATTY and ADAMS, JJ., concur.
TORBERT, C. J., and MADDOX, ALMON and EMBRY, JJ., dissent.
TORBERT, Chief Justice (dissenting).
I dissent. While the majority correctly set out the law as it has evolved in Alabama, they misapply this law to the facts of this case. The majority states that the testimony of Ms. Sport, an officer of the First National Bank of Dozier, "along with the totality of the circumstances," shows that J. W. Chandler "possessed the requisite intent to relinquish control over the deed" to have it operate as a valid conveyance. This is simply not the case.
For the delivery to be complete, the grantor must completely divest himself of any control over the title. As long as he reserves to himself the locus penitentiae, whether by express reservation or by not placing the deed beyond his control, then as a matter of law he has not foregone his right of revocation. Fitzpatrick v. Brigman, 130 Ala. 450, 30 So. 500 (1900).
The case of Culver v. Carroll, 175 Ala. 469, 57 So. 767 (1911), best described the prerequisites for valid delivery:
Perhaps the clearest and completest statement of the law on this subject is the following, by Dowling, J., in Osborne v. Elslinger, 155 Ind. 351, 360, 58 N.E. 439, 442, 80 Am.St.Rep. 240, 247: "Where the claim of title rests upon the delivery of the deed to a third person, the deed must have been properly signed by the grantor, and delivered by him, or by his direction, unconditionally, to a third person for the use of the grantee, to be delivered by such person to the grantee, either presently, or at some future date, or upon some inevitable contingency, the grantor parting, and intending to part, with all dominion and control over it, and absolutely surrendering his possession and authority over the instrument, so that it would be the duty of the custodian or trustee for the grantee, on his behalf, and as his agent and trustee, to refuse to return the deed to the grantor, for any purpose, if demand should be made upon him. And there should be evidence beyond such delivery of the intent of the grantor to part with his title, and the control of the deed, and that such delivery is for the use of the grantee. If the deed is placed in the hands of a third person, as the agent, friend, or bailee of the grantor, for safe-keeping only, and not for delivery to the grantee; if the *784 fact that the instrument is a deed is not made known to such third person, either at the time it is handed over, or at any time before the death of the grantor; if the name of the grantee, or other description of him, is not given; and if there is no evidence beyond the mere fact of such delivery of the intent of the grantor to part with his control over the instrument and his title to the landthen such transfer of the mere possession of the instrument does not constitute a delivery, and the instrument fails for want of execution."
175 Ala. at 476-77, 57 So. 767.
While J. W. Chandler did leave instructions to the bank to deliver the deed upon his death, it is without doubt that the bank held the deed only for safekeeping and that he retained control over the deed. Ms. Sport testified that the deed was in a file at the bank under the name of Mr. J. W. Chandler at the time of his death in 1972. She stated that this was done as part of the normal service rendered by the banks in that area, since these banks do not have safe deposit boxes. When specifically questioned about the issue of control, the following ensued:
Q. Ms. Sport, I will ask you ma'am, would Mr. Chandler or any other person, for that matter, have the right or control to go get the papers from the time that he put them in there at any time prior to their death?
A. Why, sure.
Q. Would you tell the Court the purpose of your bank having this for your customers, please?
A. Just for safekeeping.
Q. Thank you.
From this testimony, it is quite obvious that Mr. Chandler did not place the deed beyond his control. Thus, as a matter of law his right of revocation was not gone and no finding of a valid delivery could have been made. Culver v. Carroll, 175 Ala. 469, 57 So. 767 (1911); Fitzpatrick v. Brigman, 130 Ala. 450, 30 So. 500 (1900). See also, Johnson v. Bridges, 333 So.2d 813 (Ala.1976); Elsberry v. Boykin, 65 Ala. 336 (1880).
Had J. W. Chandler deposited the deed into a personal safe deposit box, there is no question that the delivery would not have been complete. Here, however, the bank had no safe deposit boxes, but held documents in special files for its customers. Ms. Sport's testimony shows that these files are the functional equivalent of safe deposit boxes. Therefore, there can be no doubt that J. W. Chandler still had the deed within his control and possession.
For these reasons, I cannot agree that there was a valid delivery of the deed. Thus, I would reverse the holding of the trial court.
MADDOX, ALMON and EMBRY, JJ., concur.